VALKYRIE LAW GROUP, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
1 N. State Street, Suite 1500
Chicago, IL 60602
Telephone: 312-448-6602
Email: hblaise@valklaw.com

Attorneys for Plaintiff,
AMBER MAY LOWE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AMBER MAY LOWE, an individual,

Plaintiff,

v.

DISH NETWORK L.L.C., a Colorado limited liability company,

Defendant.

CASE NO: ______________________

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff AMBER MAY LOWE, an individual, by and through her attorneys, Valkyrie Law Group, P.C., as and for her Complaint for Copyright Infringement against Defendant DISH NETWORK L.L.C., a Colorado limited liability company ("Defendant"), states as follows:

## NATURE OF THE ACTION

1. This is an action to stop Defendant's infringement of Lowe's copyrighted sound recording entitled "Oh, I wasn't sad (audio)" (hereinafter the "Work" or the "Sound Recording"), which Defendant exploited for commercial gain in an advertisement on its social media pages, and to recover damages for Defendant's willful conduct.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question).

3. This Court has personal jurisdiction over Defendant in that, among other things, Defendant does business in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District.

4. Venue is proper in this Judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(a).

## THE PARTIES

5. Plaintiff AMBER MAY LOWE ("Plaintiff," "Lowe") is an individual and citizen of the United Kingdom, domiciled in Sutton Coldfield, West Midlands, United Kingdom.

6. Plaintiff is a content creator who creates and publishes original video and audio content on the Instagram platform under the handle @eats.travels to over 5,467 followers.

7. Plaintiff creates and posts short-form videos featuring restaurants, hotels, travel destinations, and hospitality experiences, and works with brands on user-generated content and promotional campaigns, such as The March, The Restaurant Tour, and Luxury Escapes.

8. Plaintiff is the sole author and owner of the Work.

9. Defendant DISH NETWORK L.L.C. ("Defendant," "DISH") is a Colorado limited liability company with its headquarters located at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

10. Defendant is a pay-television provider that markets and sells satellite television and streaming services throughout the United States, including its Spanish-language television service, DishLATINO.

11. Defendant operates social media accounts for its brands across multiple social media platforms, with follower consumers throughout the United States,

including in this judicial district.

12. Defendant is responsible for the social media accounts associated with its brands, including DishLATINO.

13. Defendant operates a verified commercial social media page through the Instagram platform under the Instagram handle @dishlatino.

14. Meta Platforms, Inc. d/b/a Meta ("Meta") is a Delaware corporation, and has its headquarters in Menlo Park, California.

15. Meta is a multinational technology company that develops, owns, operates, and controls a portfolio of social networking, messaging, and digital communication platforms and related technologies. Among its principal products and services are Facebook and Instagram, both of which are social media platforms that enable users to create profiles, publish and share content, communicate with other users, and interact through features including posts, comments, messaging, stories, and live video.

16. Defendant knew that the impact of its use of the Instagram platform would therefore be aimed at the Central District of California, as the Instagram platform and the company that owns it are located in the forum.

17. Further, Defendant knew that its marketing campaign on the Instagram platform would reach consumers in the Central District of California.

## **FACTS RELEVANT TO ALL COUNTS**

### **A. Instagram**

18. Instagram is a social media and entertainment platform that provides features for individuals, creators, and businesses to create and distribute digital content.

19. Instagram also displays a curated feed of video content based on the users' viewing preferences, as well as advertisements.

20. Users who create accounts are given personal profile pages that display their username and posted content.

21. While Instagram's primary function involves post and video creation and

viewing, it also contains a custom “in-app browser” that enables users to view external websites.

22. Instagram directs users to these third-party websites in several different ways: 1) presents users with video ads in their feeds that include links to an advertised product or service’s website; and 2) users can add links to external websites on their personal profiles, a feature that influencers, businesses, and organizations routinely use to direct viewers to their brands and products.

23. When users tap on these ads or links while using Instagram, the in-app browser opens these links internally within the Instagram App instead of transferring them to a separate web browser on the user’s device such as Google Chrome or Safari.

24. When users create videos on Instagram, they have the ability to add recommended music through the in-app music library, which includes trending audio clips.

25. Instagram trends are viral phenomena that spread across the Instagram platform, driven by user participation in challenges, hashtags, dance routines, memes, or audio clips.

26. These trends often begin with individual creators who upload content featuring a particular theme, concept, or challenge.

27. As users discover these posts, they may replicate or remix the content, making it their own by adding personal twists.

28. The spread of these trends is facilitated by Instagram’s algorithm, which prioritizes content based on engagement metrics (e.g., likes, comments, shares, and watch time).

29. The more engaging the content, the more likely it is to appear on a user’s “For You” page, thus reaching a broader audience.

30. This creates a snowball effect, where trends quickly gain momentum and visibility across the platform.

31. Corporations, seeking to capitalize on the popularity of trends, may

participate in these viral challenges or meme formats by incorporating third-party copyrighted works into their videos.

32. Instagram trends frequently revolve around popular songs or audio clips, which may be copyrighted.

33. Instagram provides a commercial library for corporations to use without obtaining additional licenses from rightsholders.

34. The terms of Facebook's Music Guidelines, which are also incorporated into Instagram's Terms of Use, are as follows:

> These supplemental terms apply if you post, share, or promote any videos or other content containing music on any Meta Products.
>
> **You are responsible for the content you post or promote**
>
> People use our Products to share content with their fans, family and friends. Keep in mind you remain solely responsible for the content that you post or promote, including any music that is featured in that content. Nothing in these terms constitutes any authorization by us with respect to any use of music on any of our Products.
>
> Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses. Eligibility for, and participation in, Music Revenue Sharing does not by itself make a video commercial.
>
> **You may not use content on our Products to create a music listening experience**
>
> We want your fans, family and friends to be able to enjoy your content. However, if you use videos or other content on our Products to create a music listening experience for yourself or for others, your content may be blocked and your page, profile or group may be deleted. This includes live videos.
>
> **Unauthorized content may be removed**

> If you post content that contains music owned by someone else, your content may be reviewed by the applicable rights owner and your content may be blocked, muted or removed if your use of that music is not properly authorized.
>
> **You may not be able to post or access content containing music in every country of the world**
>
> We want you to be able to share content with your fans, family and friends wherever they are, but any music in your content, if it is allowed at all, may not be available in all countries of the world.
>
> **The following guidelines can help you plan for your content:**
>
> - The greater the density of music in content, the more likely it may be limited (e.g., blocked, muted or ineligible for Music Revenue Share)
> - Shorter clips of music are recommended
> - There should always be a visual component to your content; recorded audio should not be the primary purpose of the content
> - For additional information, please see Updates and Guidelines for Including Music in Video
>
> **You may be able to dispute the action taken on your content**
>
> If you believe you have the rights to use the music content that was restricted, or that an action was taken in error, you may be able to dispute that action via the notification you received. Depending on the nature of restriction, our tools may enable you to contact the applicable rights holder directly; the content may be automatically restored; or your dispute may be reviewed by a member of Meta's operations teams to confirm these policies were appropriately applied.

Music Guidelines, FACEBOOK (Mar. 26, 2024), https://www.facebook.com/legal/music_guidelines (last visited Oct. 12, 2026).

35. Instagram's Terms of Use incorporates Music Guidelines found on Facebook's website which specifically prohibit the commercial use of music without an appropriate license. Terms of Use, INSTAGRAM (2026) https://help.instagram.com/581066165581870 (last visited Oct. 12, 2026).

36. Instagram further provides its terms related to access to the licensed music library on the platform:

> Musical expression is encouraged across Meta technologies.
>
> **Our agreements with rights holders**
>
> Meta is obligated to uphold our agreements with the rights holders of the music that's available in our licensed music library. These agreements are designed to protect artists, songwriters, and their works. The music available in our library is intended for personal, non-commercial use.
>
> **Restricted access to the music library**
>
> To make sure that the music in our licensed library is not used for commercial purposes, certain business accounts and certain types of posts do not have access to the library. Licensed music may also not be available in certain countries or regions.
>
> If your account does not have access to the licensed music library, then you may be able to use **Meta's Sound Collection**.
>
> **About Meta's Sound Collection**
>
> Sound Collection provides access to over 14,000 songs and sounds which are entirely royalty free and safe to use in Reels and Instagram Stories. The content in Sound Collection can be used for commercial purposes like ads. You can find this music library by swiping up and selecting **Music sticker** in Stories, or by tapping **Audio** in the Reels camera.

Access to the licensed music library on Instagram, INSTAGRAM HELP CENTER (2006) https://www.facebook.com/help/instagram/402084904469945?dl_redirect=1&_rdr (last visited Oct. 12, 2026).

37. While Meta provides its licensed music library and Meta's Sound Collection for users to select from to use across its products, including the Instagram platform, corporations often bypass proper licensing arrangements by improperly using copyrighted audio from Meta's licensed music library in their commercial videos, instead of royalty free audio from Meta's Sound Collection.

38. In repurposing user-generated content and/or influencer videos that feature copyrighted works, corporations often exploit content without obtaining the necessary rights to use such content.

39. In addition to Meta's licensed music library and Meta's Sound Collection, when a user publishes a video containing audio that the user created, Instagram identifies that audio as "original audio" attributed to the account that created it, and generates an audio page for that original audio.

40. Instagram displays a "Use audio" button on such audio pages and videos, which allows other users to view the audio page and access the creator's original audio from within the Instagram app.

41. The "Use audio" button is a technical feature of the Instagram platform. It is not a license. Nothing in Instagram's Terms of Use, Meta's Music Guidelines, or the "Use audio" interface grants a commercial account the right to use another user's copyrighted original audio in advertising or other promotional content.

42. To the contrary, Meta's Music Guidelines expressly provide that use of music for commercial or non-personal purposes is prohibited unless the user has obtained appropriate licenses, that users remain solely responsible for the content they post or promote, and that nothing in Meta's terms constitutes any authorization by Meta with respect to any use of music on any of its products.

43. Meta further restricts certain business accounts' access to its licensed

music library to prevent commercial use, and directs commercial users to Meta's Sound Collection, which contains royalty-free audio cleared for commercial purposes such as advertisements.

44. Defendant is a commercial user under the terms of Meta and Instagram's Terms of Service and was on notice that it was not entitled to use any music for commercial purposes without first obtaining permission from all necessary rights holders.

**B. The Work**

45. The Work entitled "Oh, I wasn't sad (audio)" is an original sound recording created by Plaintiff that was first published on July 14, 2024 on Plaintiff's @eats.travels Instagram account, where it is identified as Plaintiff's original audio. *See* https://www.instagram.com/reels/audio/1011524047259933.

46. The Work was registered with the U.S. Copyright Office on December 19, 2024, Registration No. SR 1-020-228. *See* **Exhibit A**, Registration.

47. The Work is not available on Instagram for commercial use, as it does not appear in Meta's Sound Collection.

48. Plaintiff has never licensed the Work to Defendant or authorized Defendant to use the Work for any purpose.

**C. Defendant's Infringing Video**

49. On March 10, 2025, Defendant posted an Instagram video on its commercial @dishlatino Instagram page which included the Work as its audio (hereinafter the "Video"). *See* https://www.instagram.com/p/DHCSF3CRGWN.

///

///

///

///

///

///




50. The Video was an advertisement for Defendant's DishLATINO On Demand service. The Video's caption stated: "Este marzo, las mejores historias llegan a tu pantalla con los estrenos On Demand de DishLATINO. ¿Qué vas a ver primero?" ("This March, the best stories come to your screen with DishLATINO's On Demand premieres. What will you watch first?"), followed by the hashtags #DishLATINO and #OnDemand.

51. The Video prominently features a DISH-branded remote control in the foreground, with on-screen text reading "Oh no estaba triste, solo necesitaba…", a Spanish-language rendering of the Work's audio. Defendant thus built its advertisement around the Work.

52. The Video received at least 309 views and 11 likes on Instagram.

53. Instagram identified the audio used in the Video as "eats.travels • oh i wasn't sad i…", attributing the Work to Plaintiff's @eats.travels account. Defendant therefore knew, at the time it posted the Video, that the audio in its advertisement was created and owned by Plaintiff, not by Defendant.

54. Upon information and belief, the Video was created by Defendant's advertising agency and/or other agents at Defendant's direction and for Defendant's benefit, and was approved, published, and distributed by Defendant on its own commercial Instagram page.

55. Defendant did not obtain any license or authority from Plaintiff to use the Work in the Video posted on Defendant's commercial Instagram page described above.

56. In order to synchronize the Work to an audiovisual work in the manner that Defendant has so done, Defendant would have needed a master use license for the Sound Recording for its post without infringing Plaintiff's exclusive rights, including reproduction, derivative work, distribution, and digital audio transmission performance rights.

**D. Defendant's Intentional Infringement**

57. As the owner of the copyright in the Sound Recording under 17 U.S.C. § 106, Plaintiff has the exclusive right to: Make Copies (17 U.S.C. § 106(1), to reproduce the copyrighted work in copies or phonorecords); Create Derivative Works (17 U.S.C. § 106(2), to prepare derivative works based upon the copyrighted work); Distribute (17 U.S.C. § 106(3), to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending); and Perform the Work Publicly by Means of a Digital Audio Transmission (17 U.S.C. § 106(6), in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission).

58. Defendant is a sophisticated national media and telecommunications company that regularly licenses audiovisual and musical content and is familiar with the requirement to obtain licenses for the commercial use of copyrighted sound

recordings.

59. Despite Instagram attributing the Work to Plaintiff, and despite Meta's terms prohibiting the commercial use of audio without appropriate licenses, Defendant used the Work in its advertisement without seeking or obtaining any license from Plaintiff.

60. Plaintiff, through her authorized representative, provided Defendant with formal written notice of its infringing use of the Work in the Video on June 12, 2026.

61. On or about June 17, 2026, Defendant removed the Video from the Instagram platform, approximately fifteen (15) months after the original posting.

**COUNT I**

**DIRECT COPYRIGHT INFRINGEMENT AS TO THE USE OF THE SOUND RECORDING**

62. Plaintiff incorporates the preceding Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. The Sound Recording is owned and/or controlled by Plaintiff and is an original, creative work that constitutes copyrightable subject matter under the Copyright Act.

64. Plaintiff owned and controlled the copyright to the Sound Recording during the relevant times of Defendant's infringement.

65. Defendant had access to but was not licensed by Plaintiff to use Plaintiff's Sound Recording in the manner Defendant has used the Work.

66. By its actions, Defendant's creation, posting, and distribution of the Video infringes Plaintiff's copyright because Defendant: 1) reproduced the Sound Recording in violation of 17 U.S.C. § 106(1); 2) prepared derivative works based upon the Sound Recording in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Sound Recording to the public in violation of 17 U.S.C. § 106(3); and/or 4) performed the Sound Recording publicly by means of a digital audio transmission in violation of 17 U.S.C. § 106(6).

67. Through these unauthorized uses, Defendant has unlawfully reproduced, prepared a derivative work, distributed, and/or publicly performed the Sound Recording in violation of 17 U.S.C. § 106 without any authorization, permission, license, or consent from Plaintiff.

68. Defendant's acts of infringement are knowing, deliberate, and in complete disregard for Plaintiff's rights.

69. Defendant's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

70. As a direct and proximate result of Defendant's infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to statutory damages, or her actual damages, at her election, including Defendant's profits directly and indirectly attributable to the infringement, at Plaintiff's election, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiff's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000.00 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), including attorneys' fees and costs pursuant to 17 U.S.C. § 505.

71. Plaintiff is also entitled to enhanced statutory damages as Defendant was either actually aware that it did not have the right to use the Sound Recording based on Instagram's Terms of Use and Meta's Music Guidelines, Instagram's attribution of the Work to Plaintiff, and the fact that it did not hold a single license from Plaintiff; or Defendant's actions were the result of reckless disregard for, or willful blindness to, Plaintiff's rights.

72. Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

**PRAYER FOR RELIEF AS TO COUNT I**

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant:

a) A declaration that Defendant's March 10, 2025 Instagram post has

willfully infringed Plaintiff's copyrighted Sound Recording in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's willful infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiff's election, Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) Enhanced statutory damages for willful infringement under 17 U.S.C. § 504(c)(2);

h) A judgment against Defendant awarding Plaintiff her attorneys' fees and costs pursuant to 17 U.S.C. § 505;

i) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

j) Any and all relief deemed just and appropriate by the Court.

**<u>COUNT II</u>**

**VICARIOUS COPYRIGHT INFRINGEMENT AS TO THE USE OF THE SOUND RECORDING**

73. Plaintiff incorporates the preceding Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

74. The Sound Recording is owned and/or controlled by Plaintiff and is an original, creative work that constitutes copyrightable subject matter under the Copyright Act.

75. Plaintiff owned and controlled the copyright to the Sound Recording during the relevant times of Defendant's infringement.

76. If Defendant is not directly liable for the infringing Video, Defendant is, at the very least, vicariously liable for the infringing Video created and/or posted on Defendant's behalf by its advertising agency and/or other agents.

77. As described above, Defendant has the right, ability, and authority to control and supervise the creation and posting of videos created for its brands and posted to its commercial social media accounts, including the @dishlatino Instagram account, and Defendant ultimately controlled whether the Video was published on, and whether it remained on, its Instagram account.

78. Defendant failed to exercise its right and ability to control and supervise the infringing activity, and permitted the Video to remain on its Instagram account for approximately fifteen (15) months.

79. As described above, Defendant receives a direct financial benefit from the infringing Video and from the use of Plaintiff's Sound Recording therein.

80. The exploitation of the Sound Recording in the infringing Video saved Defendant the cost of a license, promoted Defendant's DishLATINO On Demand service, increased Defendant's sales and revenue, enhanced the visibility of Defendant's brands, and drove users who would not otherwise view Defendant's social media content to its accounts and pages that promote Defendant's brands.

81. Plaintiff has been damaged, and will continue to be damaged, by Defendant's knowing, deliberate, and willful acts of vicarious infringement.

82. Plaintiff is entitled to injunctive relief prohibiting Defendant from further acts of vicarious infringement.

83. As a direct and proximate result of Defendant's vicarious infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to statutory damages, or her actual damages, at her election, including Defendant's profits directly and indirectly attributable to the infringement, at Plaintiff's election, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiff's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000.00 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), including attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**PRAYER FOR RELIEF AS TO COUNT II**

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant:

a) A declaration that Defendant's March 10, 2025 Instagram post has willfully infringed Plaintiff's copyrighted Sound Recording in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's willful infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiff's election, Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) Enhanced statutory damages for willful infringement under 17 U.S.C. § 504(c)(2);

h) A judgment against Defendant awarding Plaintiff her attorneys' fees and costs pursuant to 17 U.S.C. § 505;

i) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

j) Any and all relief deemed just and appropriate by the Court.

## COUNT III

## CONTRIBUTORY COPYRIGHT INFRINGEMENT AS TO THE USE OF THE SOUND RECORDING

84. Plaintiff incorporates the preceding Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

85. The Sound Recording is owned and/or controlled by Plaintiff and is an original, creative work that constitutes copyrightable subject matter under the Copyright Act.

86. Plaintiff owned and controlled the copyright to the Sound Recording during the relevant times of Defendant's infringement.

87. If Defendant is not directly liable for the infringing Video, Defendant is,

at the very least, contributorily liable for the infringing Video created and/or posted on Defendant's behalf by its advertising agency and/or other agents.

88. As described above, Defendant induced and/or materially contributed to the infringement by commissioning, directing, approving, publishing, and distributing the Video on its own commercial Instagram account.

89. As described above, Defendant knew, had reason to know, or was willfully blind to the fact that the Video used Plaintiff's unlicensed copyrighted Sound Recording because, among other things, Instagram publicly attributed the audio in the Video to Plaintiff's @eats.travels account, Defendant reviewed and published the Video on its own account, and Defendant held no license from Plaintiff.

90. To the extent that Defendant does not have actual knowledge, Defendant's substantial investment in social media marketing, its sophistication in licensing content, and Meta's express terms regarding the commercial use of audio establish that Defendant was aware of a high probability of infringement and consciously avoided confirming it.

91. Defendant's conduct constitutes willful contributory copyright infringement.

92. Plaintiff has been damaged, and will continue to be damaged, by Defendant's acts of contributory infringement.

93. Plaintiff is entitled to injunctive relief prohibiting Defendant from further acts of contributory infringement.

94. As a direct and proximate result of Defendant's contributory infringement of Plaintiff's copyrighted Sound Recording and exclusive rights under copyright, Plaintiff is entitled to statutory damages, or her actual damages, at her election, including Defendant's profits directly and indirectly attributable to the infringement, at Plaintiff's election, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiff's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000.00 per infringed work, or such other amounts

as may be proper under 17 U.S.C. § 504(c), including attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF AS TO COUNT III

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant:

a) A declaration that Defendant's March 10, 2025 Instagram post has willfully infringed Plaintiff's copyrighted Sound Recording in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's willful infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiff's election, Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) Enhanced statutory damages for willful infringement under 17 U.S.C.

§ 504(c)(2);

h) A judgment against Defendant awarding Plaintiff her attorneys' fees and costs pursuant to 17 U.S.C. § 505;

i) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

j) Any and all relief deemed just and appropriate by the Court.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

DATED: October 19, 2026

Respectfully submitted,

**AMBER MAY LOWE**

*/s/ Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiff*